No. 2024-2350

## UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

KOVE IO, INC.,

*Plaintiff-Appellee*,

v.

AMAZON WEB SERVICES, INC.,

*Defendant-Appellant*.

Appeal from the United States District Court for the
Northern District of Illinois
No. 18-cv-08175 (Pallmeyer, C.J., and Kennelly, J.)

## CORRECTED REPLY BRIEF FOR APPELLANT
## AMAZON WEB SERVICES, INC.

William M. Jay
GOODWIN PROCTER LLP
1900 N Street, N.W.
Washington, DC 20036
(202) 346-4000

Jesse Lempel
GOODWIN PROCTER LLP
100 Northern Ave.
Boston, MA 02210
(617) 570-1000

May 30, 2025

*Counsel for Appellant Amazon Web Services, Inc.*

# CERTIFICATE OF INTEREST

Counsel for Appellant Amazon Web Services certifies the following:

**1.     The full name of the entity represented by me is:**

Amazon Web Services, Inc.

**2.     The name of the real party in interest represented by me is:**

N/A

**3.     All parent corporations and any publicly held companies that own 10% or more stock in the entity are:**

Amazon.com, Inc.

**4.     The names of all law firms, partners, and associates that appeared for the entity in the trial court or agency or are expected to appear in the court (and who have not entered an appearance in this case) are:**

Jeffrey M. Saltman, Fisch Sigler LLP; Andrew Landers Ramos, Fisch Sigler LLP; Brandon P. Evans, Fisch Sigler LLP; Elizabeth Bernard, Fisch Sigler LLP; Ken Fung, Fisch Sigler LLP; Lisa Noelle Phillips, Fisch Sigler LLP; Adam Allgood, RuyakCherian LLP; Adam Unikowsky, Jenner & Block, LLP; Michael Thomas Werner, Jenner & Block LLP; Terri Lynn Mascherin, Jenner & Block LLP; Timothy Joseph Barron, Jenner & Block LLP; Michael Glenn Babbitt, Wilkie Farr & Gallagher, LLP

**5.     Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?**

No.

**6.     Any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees):**

N/A

May 22, 2025                              */s/ William M. Jay*
                                         William M. Jay

                                         *Counsel for Amazon Web Services, Inc.*

**TABLE OF CONTENTS**

INTRODUCTION ....................................................................................1

ARGUMENT .........................................................................................3

I.    Kove's claims are ineligible under Section 101. ...........................3

    A.    Kove's own characterizations of its patents show they are directed to abstract data manipulation. ..................................3

    B.    Kove does not identify any technological improvement recited in the asserted claims. ..............................................5

        1.    Using location servers is not a technological improvement. ......................................................6

        2.    Using distributed hashing is not a technological improvement. ......................................................7

        3.    The asserted claims do not recite "separating data entities from data." ..........................................9

    C.    This Court's precedents confirm that Kove's patents are directed to abstract data manipulation. ............................11

    D.    AWS squarely raised its Section 101 argument below. ....................15

    E.    There is no basis to affirm based on *Alice* step two or harmless error. ........................................................16

II.   The district court erroneously interpreted the agreed-upon construction of "location" as precluding AWS's non-infringement theory. ........................................................18

    A.    Kove does not defend the "help[s] identify" construction. ...............20

    B.    Kove does not defend the exclusion of AWS's locations-sometimes-change theory of non-infringement. ..............................21

    C.    Dr. Grama's testimony about DynamoDB was consistent with AWS's commitment. ..............................................24

III.  The district court erred procedurally and substantively in construing "non-hierarchical." .........................................25

IV.  A new trial on damages is necessary. ....................................29

    A.    Bergman's bargaining-split opinion should have been excluded. ......29

B.    Neither Goldilocks nor any other testimony can sustain the $525 million award ............................................................................. 30

CONCLUSION ....................................................................................................... 32

# TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
  805 F.3d 1368 (Fed. Cir. 2015) ...........................................................19

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018) .................................................3, 5

*Broadband iTV, Inc. v. Amazon.com, Inc.*,
  113 F.4th 1359 (Fed. Cir. 2024), *cert. denied*, No. 24-827 (U.S.
  Apr. 21, 2025) ..........................................................................6

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*,
  381 F.3d 1371 (Fed. Cir. 2004) ...............................................26, 27

*Costello v. Grundon*,
  651 F.3d 614 (7th Cir. 2011) ...................................................17

*Data Engine Techs. LLC v. Google LLC*,
  906 F.3d 999 (Fed. Cir. 2018) ..................................................6

*Dupree v. Younger*,
  598 U.S. 729 (2023)..................................................................17

*EcoFactor, Inc. v. Google LLC*,
  __ F.4th __, 2025 WL 1453149 (Fed. Cir. May 21, 2025) (en banc) ..........29, 30

*Elec. Power Grp., LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016) ................................................8

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016) ................................................6

*Hoist Fitness Sys., Inc. v. TuffStuff Fitness Int'l, Inc.*,
  826 Fed. Appx. 916 (Fed. Cir. 2020)........................................19

*IBM v. Zillow Grp., Inc.*,
  50 F.4th 1371 (Fed. Cir. 2022) .................................................13

*Intell. Ventures I LLC v. Capital One Fin. Corp.*,
  850 F.3d 1332 (Fed. Cir. 2017) ............................................................5

*Intell. Ventures I LLC v. Erie Indem. Co.*,
  850 F.3d 1315 (Fed. Cir. 2017) ..........................................................11

*Lesiv v. Ill. Cent. R.R. Co.*,
  39 F.4th 903 (7th Cir. 2022) ...............................................................17

*Lighting Ballast Control LLC v. Philips Elecs. N. Am. Corp.*,
  790 F.3d 1329 (Fed. Cir. 2015) ..........................................................26

*Omega Eng'g, Inc, v. Raytek Corp.*,
  334 F.3d 1314 (Fed. Cir. 2003) ..........................................................28

*PersonalWeb Techs. LLC v. Google LLC*,
  2020 WL 520618 (N.D. Cal. Jan. 31, 2020).......................................12

*PersonalWeb Techs. LLC v. Google LLC*,
  8 F.4th 1310 (Fed. Cir. 2021) .......................................1, 3, 11, 12, 14

*Pfizer, Inc. v. Lee*,
  811 F.3d 466 (Fed. Cir. 2016) ............................................................16

*Recentive Analytics, Inc. v. Fox Corp.*,
  134 F.4th 1205 (Fed. Cir. 2025) .......................................................3, 8

*SAP v. InvestPic, LLC*,
  898 F.3d 1161 (Fed. Cir. 2018) ............................................................8

*Soo Line R.R. Co. v. Conrail*,
  965 F.3d 596 (7th Cir. 2020) ..............................................................16

*Tech. Props. Ltd. LLC v. Huawei Techs. Co., Ltd.*,
  849 F.3d 1349 (Fed. Cir. 2017) ..........................................................28

*Tidemann v. Nadler Golf Car Sales, Inc.*,
  224 F.3d 719 (7th Cir. 2000) ..............................................................19

*Trinity Info Media, LLC v. Covalent, Inc.*,
  72 F.4th 1355 (Fed. Cir. 2023) ...........................................................17

*Turubchuk v. S. Ill. Asphalt Co., Inc.*,
   958 F.3d 541 (7th Cir. 2020) ...............................................................19

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
   874 F.3d 1329 (Fed. Cir. 2017) .......................................................8, 9

*United States v. Black*,
   999 F.3d 1071 (7th Cir. 2021) ...........................................................19

*United States v. Godinez*,
   7 F.4th 628 (7th Cir. 2021) ...............................................................29

*UTTO Inc. v. Metrotech Corp.*,
   119 F.4th 984 (Fed. Cir. 2024) .........................................................27

*Verizon Servs. Corp. v. Vonage Holdings Corp.*,
   503 F.3d 1295 (Fed. Cir. 2007) ...................................................27, 28

*WesternGeco L.L.C. v. ION Geophysical Corp.*,
   913 F.3d 1067 (Fed. Cir. 2019) ........................................................18

*Whitserve, LLC v. Computer Packages, Inc.*,
   694 F.3d 10 (Fed. Cir. 2012) .....................................................30, 31

## Other Authorities:

Library of Congress, *How to Use the Card Catalog*,
   https://guides.loc.gov/card-catalog/using-the-card-catalog...............14

Oral Arg., *PersonalWeb Techs. LLC v. Google LLC*, No. 2020-1543
   (Fed. Cir. Mar. 1, 2021), https://www.cafc.uscourts.gov/3-01-
   2021-2020-1543-personalweb-technologies-llc-v-google-llc-audio-
   uploaded/.........................................................................................15

## INTRODUCTION

These claims are ineligible at *Alice*'s first step, which requires evaluating the "focus of the claimed advance over the prior art." *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1315 (Fed. Cir. 2021). That focus is easy to identify here: Kove consistently told the district court and the jury what the "aim," "primary concept," or "foundational concept" of its asserted patents is: "separating the what from the where," which is Kove's pithy slogan for storing data location information separately from the underlying data. That concept is just classifying, storing, manipulating, and locating data using generic computer technology, like distributed hashing—which Kove admits it did not invent. And "separating the what from the where" is the same abstract idea at work in a library card catalog.

Kove now insists its claims focus on an improved "architecture," but there is no improved architecture in these claims. Nor do the claims require "separating data entities from data," as Kove's new backup argument contends. Kove's claims recite using conventional computer servers and techniques to identify data, classify it, store it on different servers based on its classification, and locate it. That is all abstract, and this Court's precedents foreclose Kove's arguments to the contrary.

Even if these claims were eligible under Section 101, the district court repeatedly made legal errors in construing the claims and using the construction to keep evidence from the jury. The district court erred in excluding AWS's key non-

1

infringement theories based on its mistaken interpretation of the agreed-upon construction for "location." Kove does not even defend the court's actual rulings, which are plainly wrong. Instead, Kove rewrites those rulings so that the resulting exclusions appear less objectionable. Kove's refusal to defend what the district court actually did speaks for itself.

The claim construction of "non-hierarchical" went haywire as well, both procedurally and substantively. At summary judgment, the court said no further construction of "non-hierarchical" was necessary since Kove had "conceded" that AWS's position was correct. As trial approached, however, the court suddenly adopted a *different* construction proposed by Kove, declaring that this alternative construction had somehow *already been decided* at summary judgment. This unreasoned, last-minute construction was not just procedurally flawed, but substantively wrong: it erroneously gave Kove back the claim scope it had surrendered in prosecution and arbitrarily rejected AWS's construction, which mirrors the disclaimer Kove made in prosecution to overcome the prior art. Both the substantive error and the lack of reasoning require vacating the jury verdict.

A new trial on damages is also necessary. Bergman's unreasoned bargaining-split opinion was inadmissible, and on the *de novo* review that Seventh Circuit law requires, this Court should order a new trial without it. Regardless, the jury's $525 million award cannot be sustained by the speculative damages testimony presented.

# ARGUMENT

## I.    Kove's claims are ineligible under Section 101.

Kove attempts to identify some technological improvement to which its patents are directed. But it points only to abstract mental processes that humans have been doing for centuries, such as storing items' location information separately from the items themselves, or the application of conventional techniques (such as distributed hashing) to the storage of location information. All of Kove's arguments are foreclosed by this Court's precedents.[1]

### A.    Kove's own characterizations of its patents show they are directed to abstract data manipulation.

Under *Alice*'s first step, this Court "look[s] at the focus of the claimed advance over the prior art to determine if the claim's character as a whole is directed to excluded subject matter." *Recentive Analytics, Inc. v. Fox Corp.*, 134 F.4th 1205, 1211-12 (Fed. Cir. 2025) (citation omitted). And contrary to Kove's protests that AWS has "overgeneralized," Kove.Br.38-39, AWS's characterization of the patents tracks both the claim language (Opening.Br.30-32) and Kove's own consistent descriptions of the claimed advance. *See, e.g.*, *PersonalWeb*, 8 F.4th at 1315

---

[1] Kove incorrectly asserts that AWS is challenging the denial of AWS's motion to dismiss. Kove.Br.27. The district court awarded summary judgment to Kove on eligibility, treating the pleading-stage decision as law of the case. Appx53-57. AWS challenges *that* ruling and, as the nonmovant, gets the benefit of any factual inferences. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365-66 (Fed. Cir. 2018) (applying Seventh Circuit law).

(looking to "what [plaintiff] said in opposing the § 101 motion").

At the Rule 12 stage, for instance, Kove argued that the patents "aim to separate the *where* from the *what*," which purportedly "solved" a technological "problem by tracking the location information of data files independently of the files themselves by using an intermediate layer of computer servers called 'location servers.'" Appx655. Kove's counsel specifically identified the purported "improvements" as "the idea of using an intermediate server." Appx702-03.

Kove repeated this characterization at the claim construction hearing, telling the district court that "the *primary concept* of the [Kove] patent[s] has to do with storing and retrieving data where the location of that data is managed separately from the data itself," which is an "idea" captured by "the phrase 'separating the what from the where.'" Appx10828 (emphasis added).

Kove hammered this point repeatedly at trial. It told the jury the patents had three "fundamental concepts" (Appx33788) or "foundational concepts" (Appx34148-56): assign each data entity a "unique identifier, separate the what from the where, and distribute the locations." Appx34280. "Here's one of the big things," Kove stressed: "part of the magic is, you separate the what from the where." Appx33789. Kove's expert testified that "the problem that's being solved" is finding where the data is stored, and that the "architecture" for "addressing that problem" is "this concept of separating the what from the where." Appx34152-54; *see*

Appx34548 ("[W]hen I say separate the what from the where, it's about this concept of using locations and location servers.").

It is understandable that Kove now runs away from "separating the what from the where," because that idea is undeniably abstract. Opening.Br.30-31; pp. 6-7, *infra*.

## B. Kove does not identify any technological improvement recited in the asserted claims.

Kove contends that "[e]ach claim is directed to a specific architecture for a distributed database" that supposedly provides a "concrete technological solution" to a "specific technological problem." Kove.Br.29. But it is not enough to "limit[] the invention to a technological environment for which to apply the underlying abstract concept." *E.g.*, *Intell. Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1340 (Fed. Cir. 2017). Rather, Kove would need "evidence that [the claimed innovation] improves computer functionality in some way." *Berkheimer*, 881 F.3d at 1367. It has none. In fact, Kove and its experts admitted that every supposed architectural feature it now highlights ("separating the what from the where," distributed hashing, etc.) was utterly conventional.

While Kove repeatedly invokes the term "architecture," it fails to identify the type of technological improvement that could be patent-eligible. Applying preexisting, conventional means to store *location* information on a separate server does not create patent-eligibility. And one of its supposed improvements,

"separating data entities from data," is not even claimed.

That distinguishes this case from the ones Kove invokes, such as *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016), in which the claims really were directed to a specific technological improvement. In *Enfish* that was a "*self-referential* table for a computer database," "requiring a four-step algorithm," which "function[ed] differently"—and better—"than conventional database structures." *Id.* at 1336-38. No one argued that humans had used self-referential tables before computers to solve conventional rather than technological problems. Likewise, in *Data Engine Technologies LLC v. Google LLC*, 906 F.3d 999 (Fed. Cir. 2018), the claims were "directed to" a problem specifically arising in the context of *electronic* spreadsheets, *i.e.*, "avoid[ing] the burdensome task of navigating through spreadsheets in separate windows using arbitrary commands," and the claimed invention solved that problem using actual technological improvements rather than "merely labeled buttons or other generic icons." *Id.* at 1011. Like *Enfish*, "*Data Engine* require[s] a specific, technological solution to a technological problem." *Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F.4th 1359, 1368 (Fed. Cir. 2024), *cert. denied*, No. 24-827 (U.S. Apr. 21, 2025). That is missing here.

### 1. Using location servers is not a technological improvement.

Start with what Kove calls the "specialized fleet of intermediate servers that store the location of the data." Kove.Br.10. These servers are entirely generic—

6

they are technologically the same as every other conventional server. The only difference is the data stored on them, *i.e.*, location information. Appx10977 ("location server" construed to mean, in relevant part, "a network-attached component that maintains a set of identifier/location mappings"). Storing location information on ordinary servers (even dedicated ones) is an abstract idea, not a technological improvement. It is not even a new abstract idea. Kove's appellate brief suggests that "storing location information across multiple intermediate servers" was a technological advance because that "reduce[s] processing time" and "strain on each location server." Kove.Br.10. But using multiple servers to store data is simply what all distributed databases do, as Kove's patent recognizes. Appx18869(1:59-60) ("A distributed database is one where data is stored and retrieved among multiple machines connected by a network."). That is an abstract idea and, again, not a new one. Appx33942-53; Appx34468-69; Appx34110-11 (Kove's witnesses conceding it "didn't invent distributed databases" and "didn't invent the idea of separating data from its location"). All Kove claims is that the data is location information.

## 2. Using distributed hashing is not a technological improvement.

Kove touts "using hash functions to distribute location information" as a "major breakthrough," and it appears to argue that a key feature of its claimed architecture is "distributed hash functions" or "distributed hash tables." Kove.Br.11-

13, 33, 38, 41.  Only two asserted claims (claims 1 and 2 of the '170 patent) even mention hashing.  And using hash functions to distribute information is just a form of "analyzing information … by mathematical algorithms"—an "essentially mental process[] within the abstract-idea category." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016); *see SAP v. InvestPic, LLC*, 898 F.3d 1161, 1168  (Fed. Cir. 2018) ("the selection and mathematical analysis of information" are "wholly abstract ideas").

Moreover, Dr. Overton and Kove's expert conceded at trial that Kove "didn't invent hashing" and "didn't invent distributed hash tables."  Appx33942; Appx34469; *see* Appx34530 (Kove's expert testifying that "distributed hash tables absolutely existed before the Kove patents did").  Kove just claims using distributed hash tables "for locations."  Appx34469.  In other words, *at most*, Kove's patents "disclose the use of an 'already available technology, with its already available basic functions, to use as a tool in executing the claimed process." *Recentive Analytics*, 134 F.4th at 1214 (brackets omitted) (quoting *SAP*, 898 F.3d at 1169-70).  Applying well-known distributed hashing technology "to this new field of use" does not create patent eligibility.  *E.g.*, *id.* at 1213.

Even *if* Kove could identify some non-abstract technological improvement related to distributed hashing, the claims do "not sufficiently describe how to achieve these results in a non-abstract way."  *Two-Way Media Ltd. v. Comcast Cable*

8

*Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017). Without elaboration, those claims recite using a "hash function" or "hash table" to "organize the data location information across the plurality of data location servers ... based on the hash function applied to the identifier string." Appx18846(21:2-13). They do not recite any specific technique for using the hash functions or hash table in some improved manner. The district court expressly acknowledged that "there are many possible ways to organize information based on a hash function," Appx10972, and agreed with Kove that the claims do not require "any specific algorithm," or "any particular type of mapping," Appx10969—precisely because, as the district court correctly observed, "the use of a hash function is not the novel aspect of the invention." Appx10972. The claims certainly do not limit the invention to any specific, non-abstract technological *improvement* to hashing—the specifications suggest using the "well-known ... hashpjw function," Appx18813(15:1-3).

### 3. The asserted claims do not recite "separating data entities from data."

Kove's appellate brief argues, for the first time, that "separating data entities from data" is a "structural element[]" of the asserted claims, and that "[t]he distinction between 'data' and 'data entities' is integral to how databases and this invention work." Kove.Br.9, 41. This appears to be Kove's sole basis for distinguishing AWS's library analogue: "Libraries … do not store data … separate from data entities." Kove.Br.39. But the asserted claims nowhere recite "separating

9

data entities from data" or storing data "separate from data entities."

As Kove correctly explains, a data entity is a logical grouping of raw data shards—in Kove's claims, these data entities are stored on servers called "data repositories." Kove.Br.9-10; Appx34151-52; Appx34158. And while a particular data entity "*could be* stored in pieces scattered across several data repositories," Kove.Br.10 (emphasis added), nothing in the claims requires that separation. Kove tacitly concedes the point, stating that data entities "usually"—but not always—are not stored where they are grouped. Kove.Br.30. In fact, the asserted claims require only "a" data repository,[2] whereas they require a "plurality" of *location* servers. *E.g.*, Appx18845(20:62-63); *see* Appx34505 ("plurality just means two or more"). And with "a" single data repository, all data entities *and* data are stored on that single machine. Kove itself argued and, the district court agreed, that in certain embodiments the "location of the data *is* the location of the entity." Appx10973-77. Therefore, the asserted claims cannot be directed to any improved method of "separating data entities from data."

In any event, Kove does not point to claim language that even mentions such a concrete technological improvement. The district court construed the "entity" in the term "data pertaining to the entity" to mean something "distinct from that data."

---

[2] In contrast, some claims *not asserted* do require "a plurality of data repositories." Appx18816(22:21); Appx18846(21:14-15).

Appx10977. But that construction simply means that a data entity is conceptually distinct from the data that make it up, Appx10975-77, much as a molecule of water is conceptually distinct from its constituent hydrogen and oxygen atoms; the construction says nothing about *storing* the data entity separate from the data. And it certainly says nothing about any improved method of logically grouping data entities on databases, which, after all, is just "how databases … work." Kove.Br.9.

### C. This Court's precedents confirm that Kove's patents are directed to abstract data manipulation.

With Kove's claims to a technological improvement debunked, there is nothing left but a "concept of classifying data … and storing it based on its classification" (*i.e.*, with location information on its own servers), which this Court has held "is abstract." *Intell. Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1327 (Fed. Cir. 2017). Moreover, as AWS has explained, storing items' location information separately from the underlying items is exactly how library card catalogs and atlases work. Opening.Br.34-37. Kove cannot patent "longstanding conduct that existed well before the advent of computers and the Internet." *Erie*, 850 F.3d at 1327.

This Court's decision in *PersonalWeb* is directly on point and rejects the same arguments raised by Kove. *See* Opening.Br.32-34. Two of the claims held ineligible in *PersonalWeb* recited "distributing a set of data files across a network of servers, determining [a] … hash of the contents of a particular data file; and in response to a

11

request for the particular data file, … providing the particular data file from a given one of the Servers … based on the … hash of the particular data file." *PersonalWeb Techs. LLC v. Google LLC*, 2020 WL 520618, at *3 (N.D. Cal. Jan. 31, 2020) (U.S. Patent No. 6,415,280, claims 31 and 32); *PersonalWeb*, 8 F.4th at 1312 n.1. This Court broke those claims down into three "component[s]" and concluded that "each component of the claims' three-step progression reflects a concept [this Court has] already described as abstract." *Id.* at 1315-17.

The Court rejected an argument just like Kove's (at 39-40) that the claims could be saved by looking to their "character as a whole." *PersonalWeb*, 8 F.4th at 1317 (internal quotation marks omitted). Because the claims focused on a "medley" or "combination" of "abstract-idea processes," the "claims as a whole" "amount[ed] only to a multistep mental process." *Id.* at 1317-18 (citation omitted). The same is true here. Kove's claims are directed to a medley of data-manipulation processes: uniquely identifying data entities, storing location information on location servers, retrieving the location information through hash functions or query-and-redirect messages, and automatically transferring data when a performance limit is triggered. Opening.Br.30-32. Kove never explains how "[s]tringing together" these abstract processes adds up to a non-abstract idea. *PersonalWeb*, 8 F.4th at 1317.

In *PersonalWeb*, as here, the patentee asserted that its claims "offer a solution 'necessarily rooted in computer technology in order to overcome a problem

specifically arising in the realm of computer networks.'" *Id.* at 1318. This Court disagreed, explaining that a library indexing system employs essentially the same concept and, therefore, "[b]oth the solution … and the problems … have long predated computers." *Id.*; *see also IBM v. Zillow Grp., Inc.*, 50 F.4th 1371, 1381 (Fed. Cir. 2022) (neither the "problem" nor "the patent's solution" was "specific to a computing environment"). So too here, as demonstrated by the library card catalog system. Opening.Br.34-37.

Kove says little to refute that its patents focus upon the same idea as a card catalog. The distinction it comes up with (for the first time on appeal) relies on the assumption that Kove's patents recite "stor[ing] data … separate from data entities," Kove.Br.39, which is simply incorrect. *See* pp. 9-11, *supra*. Regardless, the distinction is meaningless here. Kove agrees that a library book is analogous to a "data entity." Kove.Br.39. Just as the drawers in the catalog store location information for the books, the location servers store "data location information for a plurality of data entities." Appx18845(20:63-64). The card specifies where the book is stored, thereby specifying where the words, pages, and perhaps volumes comprising that work are stored, too. Indeed, each card identifies the book's *pages*, too, not only its title:



Library of Congress, *How to Use the Card Catalog*, https://guides.loc.gov/card-catalog/using-the-card-catalog. So the card discloses where to find the book (the data entity) *and* the book's words, pages, and chapters (which Kove likens to the underlying data).

Finally, in *PersonalWeb*, as here, the patentee "contend[ed] that the claims are not abstract because they claim 'a new way of locating and distributing data in a computer network' that promises efficiency benefits." 8 F.4th at 1318. Just like Kove, the patentee in *PersonalWeb* insisted that "as networks grew larger and larger," there was "a huge problem in locating, accessing, and managing data," and its invention "completely revamp[ed] … storage location systems for computer networks [and] provided a functional improvement that allowed things like the

Internet to flourish."[3]  But the Court explained that "the asserted efficiency improvements are not different in kind from those that would accrue in the library analogue." 8 F.4th at 1318.  That holds true for Kove's purported invention as well, which just implements the core ideas of a library card catalog in a database environment.

While Kove's brief incants the word "architecture" many times, it never identifies any claimed specific technological improvement other than "separating the what from the where" and applying existing technological tools to a database environment. *See* pp. 5-11, *supra*.  That is all abstract.

### D.    AWS squarely raised its Section 101 argument below.

Kove asserts that AWS's Section 101 argument has somehow "shift[ed]" from or "modif[ied]" the arguments made below, which Kove says "amount[s] to forfeiture." Kove.Br.28.  But Kove never identifies any substantive difference between AWS's argument on appeal and in the district court.  Nor could it.  AWS squarely raised this argument in briefing and oral argument dedicated solely to this issue. *See, e.g.*, Appx611-24 (arguing that Kove's patents "recite systems and methods of storing, organizing, and retrieving information," which are "abstract data-manipulation steps" that "could just as easily be applied to a library's pre-

<hr />

[3] Oral Arg. at 4:00-4:48, No. 2020-1543 (Fed. Cir. Mar. 1, 2021), https://www.cafc.uscourts.gov/3-01-2021-2020-1543-personalweb-technologies-llc-v-google-llc-audio-uploaded/.

Internet scheme of organizing its library books and card catalogues"); Appx666-75; Appx681-97; Appx713-18.

Regardless, the Seventh Circuit precedent Kove relies on (at 28) explains that "a party may elaborate in its appellate briefs"; preservation does not require that an argument be "present in all its particulars" below. *Soo Line R.R. Co. v. Conrail*, 965 F.3d 596, 601 (7th Cir. 2020); *Pfizer, Inc. v. Lee*, 811 F.3d 466, 471 (Fed. Cir. 2016) (similar).[4]  The argument is preserved.

### E. There is no basis to affirm based on *Alice* step two or harmless error.

Kove's fallback is to urge this Court to affirm the grant of summary judgment to Kove on the alternative ground of *Alice* step two, asserting that AWS "failed to adduce evidence from which a reasonable jury could find … that any claim fails step two." Kove.Br.42.  It also suggests (at 43) that there might be no prejudice if some of the claims were invalid.  Neither argument justifies affirmance.

*1. Step Two:*  At summary judgment, Kove raised no step-two evidence, relied entirely on Judge Pallmeyer's prior step-one ruling (Appx26132-35), and affirmatively urged the district court to *ignore* AWS's step-two evidence because

---

[4] In *Soo Line*, the party "accept[ed] that it waived" the relevant argument, but asked the Seventh Circuit "to overlook that waiver." 965 F.3d at 601.  Nothing like that happened here.

"any testimony about step two is irrelevant." Appx26135.[5] That is what happened.

Because Kove never sought summary judgment on step two, it cannot now salvage a victory on that basis. AWS had no burden; it was "not required to present evidence on an issue not raised by the movant." *Costello v. Grundon*, 651 F.3d 614, 635 (7th Cir. 2011); *accord Lesiv v. Ill. Cent. R.R. Co.*, 39 F.4th 903, 914-15 (7th Cir. 2022) (no obligation to respond to arguments "that the moving party might have made but did not").

Regardless, as already explained (Opening.Br.41), AWS *did* provide sufficient evidence (including expert opinion and concessions from Dr. Overton himself) from which a reasonable jury could conclude that the Kove patents do not contain "an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1365 (Fed. Cir. 2023) (quotation marks and citation omitted). That point is only confirmed by the concessions in the trial record (which would supersede the summary-judgment record, *see Dupree v. Younger*, 598 U.S. 729, 734 (2023)) by Dr. Overton and Kove's experts that every aspect of Kove's patents was well-known and conventional. Pp. 7-8, *supra*; Opening.Br.38-40. Even on appeal, Kove does not point to any contrary evidence in support of an inventive concept; it does not

---

[5] Even at the motion-to-dismiss stage, Kove never relied on any factual allegations to support a step-two argument. Appx661-62.

even bother explaining what it believes the "inventive concept" is. The Court can simply reverse.

*2. Harmless Error:* Kove suggests that if some claims are ineligible but not others (if the Court accepted Kove's brief's reliance on features that appear in some but not all claims), affirmance might still be justified because of how Kove broke down its damages case. Kove.Br.43. Kove suggests in particular that one patent "supported" a damages award larger than the jury gave. *Id.* But Kove did not separate its damages numbers by theory—to the contrary, it repeatedly wove them together. *E.g.*, Appx34821-22 ("hashing and scaling claims together"; "additional profit … taking into account all the claims"); Appx34804; Appx34806. Nor did the verdict form ask for a verdict, or did the jury render a verdict, that could show how much the jury would have awarded on fewer than all claims. Appx32707-09. It returned one large number—which differed from any of Kove's. Where "[t]he jury could have rested its award on infringement of a now-invalidated claim," the award cannot be sustained. *WesternGeco L.L.C. v. ION Geophysical Corp.*, 913 F.3d 1067, 1073 (Fed. Cir. 2019). A new damages trial would be needed if some but not all claims survive.

## II. The district court erroneously interpreted the agreed-upon construction of "location" as precluding AWS's non-infringement theory.

The district court misinterpreted the agreed-upon construction of "location" and, consequently, excluded key testimony and lines of cross-examination. AWS

would have argued that neither S3 nor DynamoDB infringes because neither the Blindex nor the storage node ID is "location information." *See* Opening.Br.42-47. Despite Kove's effort to rewrite history, the district court barred AWS from doing so—and that ruling misread the scope of the claims. The district court candidly acknowledged its uncertainty, warning that its *in limine* ruling had "at least a … 50/50 chance of being wrong" and, if so, a new trial would be needed. Appx32854-55. It is.

Kove asserts that these errors are "evidentiary rulings reversible only for abuse of discretion." Kove.Br.43. But when rulings on a motion *in limine* "involve an issue of law, review is de novo." *Turubchuk v. S. Ill. Asphalt Co., Inc.*, 958 F.3d 541, 548 (7th Cir. 2020). A mistake of law is an abuse of discretion. *United States v. Black*, 999 F.3d 1071, 1074 (7th Cir. 2021). Here, the district court explicitly relied on its interpretation of the claim construction, Appx99-100, which is an issue of law reviewed de novo. *Hoist Fitness Sys., Inc. v. TuffStuff Fitness Int'l, Inc.*, 826 Fed. Appx. 916, 921-22, 924 n.9 (Fed. Cir. 2020). Similarly, the district court's exclusion of Dr. Grama's testimony regarding DynamoDB's storage node ID was premised on the court's overbroad reading of AWS's "commit[ment]" adopted in the *in limine* order. Appx99; Appx107-08; Appx35272-76. Interpretation of AWS's stipulation is likewise a legal question reviewed de novo. *Tidemann v. Nadler Golf Car Sales, Inc.*, 224 F.3d 719, 723 (7th Cir. 2000); *Akamai Techs., Inc. v. Limelight*

*Networks, Inc.*, 805 F.3d 1368, 1374 (Fed. Cir. 2015). The standard of review does not shield the district court's mistakes here.

### A.    Kove does not defend the "help[s] identify" construction.

The district court ruled, based on its (mis)understanding of the agreed-upon construction of "location," the "only … way" AWS could argue at trial that "a Blindex is not location data" was "because it does not *help identify* (or specify) where data is stored." Appx100-01 (emphasis added). This was a radical, *sub silentio* expansion of the construction—and it is wrong. Opening.Br.42-44. The correct construction does not preclude factual argument to the jury about what the Blindex communicates—including why it matters that the Blindex never changes even when the data's location does. But the district court precluded AWS from making that argument, because it believed that the "help[s] identify" standard was the "only … way" to make the point consistent with the construction. Appx100-01.

Kove does not, and cannot, defend this unexplained expansion of the construction. Instead, Kove argues that "[t]he court *gave the jury* no such construction." Kove.Br.44. But that is neither here nor there: the court's error was misreading of the claim language to restrict AWS's evidence and argument.[6] Kove does not seriously try to defend that ruling. This Court should reverse it.

---

[6] The problematic jury instruction—a distinct error—came later. *See* p. 23, *infra*.

**B.** **Kove does not defend the exclusion of AWS's locations-sometimes-change theory of non-infringement.**

The district court erroneously barred AWS from presenting a critical non-infringement theory:   testimony that S3 does not infringe because the accused "location" information—the Blindex—*never* changes no matter how much the data's actual location changes.  Opening.Br.15, 44-45.  This is what Kove calls the "locations-sometimes-change argument," Kove.Br.47, *i.e.*, that a "location" must "specif[y] where data … is stored," but the Blindex *never* changes regardless how much the data is moved around.  The district court's sole rationale was that AWS's argument is "contrary to—because it imposes an additional limitation upon—the construction" to which AWS had agreed.  Appx99-100.  But AWS explained that it was not seeking to add a limitation—only that a fixed identifier like the Blindex does not satisfy the *existing* "specifies" limitation.  Appx31117 & n.1; Appx32739.

Kove offers no defense of the district court's actual ruling.  Instead, Kove argues that AWS did not make this argument below and that "AWS's locations-sometimes-change argument was never excluded."  Kove.Br.45-47.  Neither is true.

In opposing Kove's motion *in limine*, AWS explained that the Blindex "*never* changes" and is "immutable," which "is evidence that it's not a location" because "no matter where that … piece of data you're looking for is moved around in the system, that Blindex doesn't change."  Appx32851 (emphasis added); Appx32854; Appx32739.  The district court explicitly barred AWS from arguing "that the

Blindex is not location data *because* it does not change when the location of the data changes." Appx100 (emphasis in original). AWS could not present *any* testimony or argument that the Blindex's immutable nature means it does not "specif[y]" where the data is.

Thus, when AWS's non-infringement expert testified that "[t]he Blindex never changes," the district court sustained Kove's objection, striking the testimony "about whether a Blindex ever changes." Appx35301-05. AWS protested that the witness should at least be allowed to explain "how the system works" without "offer[ing] an opinion on whether that means there's non-infringement." Appx35303. But the court did not even permit that factual explanation, since it was "in the context of non-infringement testimony." Appx35303-04.

Kove notes that AWS and its witnesses were allowed to say two things: (1) that the Blindex is not location information and (2) that it never changes. Kove.Br.17. But AWS was barred from saying that the Blindex is not location information "*because*" it never changes. Appx100. So when the district court found AWS was not prejudiced because "the jury heard testimony confirming that a Blindex is static," Appx176, it missed the point. The prejudice arises from AWS's inability to argue that the Blindex being static *is evidence of non-infringement*. Kove itself noted that "there was a jury question on that exact point" (Appx109), and Kove's expert was allowed to testify that the Blindex's immutability is consistent

22

with infringement (Appx35022-25). AWS and its witness were precluded from arguing the opposite.

Kove's argument in this Court (at 47) that AWS's locations-sometimes-change theory of non-infringement "was never excluded" is a complete distortion of the district court's rulings, as Kove itself recognized below. It speaks volumes that Kove has no defense of what the district court actually did.

Compounding the prejudice to AWS, the district court added two sentences to the "location" construction—*after* AWS's witnesses had all testified based on the original construction—in response to purported violations of the order *in limine*. Opening.Br.47-49. Kove downplays the significance of this late-breaking claim construction as "just restat[ing] the court's pretrial ruling." Kove.Br.50. The pretrial ruling said nothing about affirmatively instructing the jury on this point—and the jurors had received a construction without these two sentences at the outset of trial. When the construction changed, AWS's inability to address it was prejudicial.

Kove next appears to suggest that AWS simply "opted" not to call back its witnesses to address the new construction. *Id.* But Kove mischaracterizes the record: when the district court decided to change the construction, AWS had already rested. Appx35597. The district court had told the jury that Kove's final rebuttal witness was "the last witness" before "the [jury] instructions." Appx35719-20. And with invalidity out of the case, AWS had no rebuttal. Appx28730; *see* Appx26198.

23

AWS had no opportunity to call back witnesses to explain why the new claim construction did not undermine AWS's non-infringement argument. And doing so would have only confused the jury, especially because AWS was precluded from arguing non-infringement because the Blindex never changes.

This Court should reverse the order *in limine* and require a new trial for the jury to decide whether the never-changing Blindex in fact "specifies" where the data is stored, as the agreed-upon construction requires.

### C. Dr. Grama's testimony about DynamoDB was consistent with AWS's commitment.

To resolve Kove's motion *in limine*, AWS "committed … that Dr. Grama won't offer any opinion that a location must be all that you need to find exactly the data that you're looking for." Appx99. Consistent with that commitment, Dr. Grama began to testify that even if a location doesn't give you *all* you need to find exactly the data, it must still give you *something* that meaningfully "specifies" where the data is—and, with respect to DynamoDB, the storage node ID is far too general, pointing only to "an entire partition." Opening.Br.46-47. Kove now says "that is not what Dr. Grama testified," Kove.Br.48—but only because before he was cut off by Kove's objection:

> So if I tell you where an entire partition is, you have absolutely no way of locating where a single row in that table is. If I just tell you these million—
>
> MR. REICHMAN: Objection, your Honor. Violation of

the [motion *in limine*].

Appx35274. The district court sustained the objection without even letting AWS respond. Appx35275-76.

This is what AWS argued below. *Contra* Kove.Br.48. AWS likened the generalized information in the storage node ID to "information pointing to the Western Hemisphere," Appx32742, just as AWS's Opening Brief likens it to "one of the seven continents" or "on Earth." Opening.Br.47. It's the same argument.

Relying on its overbroad reading of AWS's pre-trial commitment, the district court precluded important testimony that DynamoDB does not infringe. It should have been up to the jury to decide whether extremely generalized information, pointing only to an entire partition, "specifies" where the data is. This Court should reverse and let the jury decide that factual question.

## III. The district court erred procedurally and substantively in construing "non-hierarchical."

Kove begins its response to AWS's argument on the "non-hierarchical" construction by asserting that AWS "never says what order it challenges." Kove.Br.50. But AWS's Opening Brief (at 49-54) clearly challenges, on both procedural and substantive grounds, the motion *in limine* ruling adopting Kove's claim construction. Appx95-97. Relatedly, Kove's assertion (at 51) that "AWS never proposes" its own construction of "non-hierarchical" is wrong. Before the pre-trial ruling challenged on appeal, AWS explained that "non-hierarchical" should

mean (as Kove itself had earlier conceded) "each location server must be enabled to return the requested location information or know which location server contains the location information of the desired data." Appx29190-91; Opening.Br.20-21. The district court, however, inexplicably decided that it had already construed "non-hierarchical" according to Kove's preferred interpretation (Appx95; Appx147)—which never happened. Opening.Br.19-21.

Because AWS challenges that claim construction—which it opposed below—there was no need to *separately* object to the jury instruction reciting the construction, as Kove incorrectly argues. Kove.Br.51. This Court has repeatedly held a claim construction may be challenged on appeal without separately objecting to the jury instruction "where a party's position on claim construction is made clear before the district court and the district court has rejected that position" in a pre-trial ruling. *Lighting Ballast Control LLC v. Philips Elecs. N. Am. Corp.*, 790 F.3d 1329, 1337-38 (Fed. Cir. 2015); *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 381 F.3d 1371, 1381 (Fed. Cir. 2004) (same under Seventh Circuit law).

Kove has no defense for the district court's procedural lapse: when it made the ruling on the pre-trial motion, the court stated that the construction of "non-hierarchical" had already "been made" at summary judgment. Appx95. But the summary judgment order said that it would be "unnecessary" to construe "non-hierarchical" since "Kove has conceded that the mandate that 'each server in the

server network' must be enabled to 'return the requested information' or 'know which location server contains the location(s) of the desired data' is disclosed by the 'non-hierarchical configuration' that the claims require." Appx41-42. That is precisely the construction AWS urged pre-trial, Appx29190-91, and radically different from what the court ultimately adopted, Appx95; Appx127. When it adopted Kove's preferred construction in the pre-trial ruling, the district court apparently overlooked its prior recognition that "Kove has conceded" the correctness of AWS's proposed construction. Appx41-42.

That procedural lapse alone is grounds for vacatur because, at a minimum, "fuller claim-construction proceedings and analysis are needed than were provided in and by the district court." *UTTO Inc. v. Metrotech Corp.*, 119 F.4th 984, 994-98 (Fed. Cir. 2024) (vacating claim construction because of "insufficient exploration in the record" and a need for "more focused analysis"). And this is no harmless error. This incorrect claim construction played an outsized role at trial, allowing Kove's expert to testify that the accused products' hierarchical structures were "non-hierarchical" and precluding cross-examination of that expert about conflicting statements he had made about exactly this issue. Opening.Br.22-23, 52-54. Because "the jury could reasonably have reached a different verdict" under the correct instruction, "the verdict should not stand." *Cardiac Pacemakers*, 381 F.3d at 1383; *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1307-08 (Fed. Cir.

27

2007) (vacating infringement verdict because of erroneous claim construction).

While the Court can remand the construction of "non-hierarchical" to the district court, it need not do so because the correct construction is clear. Kove does not and cannot dispute what the district court held at summary judgment: "Kove has conceded" that, under the "non-hierarchical" limitation, "'each server in the server network' must be enabled to 'return the requested information' or 'know which location server contains the location(s) of the desired data.'" Appx41-42. As AWS has detailed, Kove made such statements during prosecution to overcome the prior art (Oracle). Opening.Br.18-23, 50-51.

Kove appears to argue that despite its disclaimer, the district court's construction of the asserted claims is permissible if it does not "read on" the Oracle prior art. Kove.Br.53. That is irrelevant: "the scope of surrender is not limited to what is absolutely necessary to avoid a prior art reference." *Tech. Props. Ltd. LLC v. Huawei Techs. Co., Ltd.*, 849 F.3d 1349, 1359 (Fed. Cir. 2017). What matters is that Kove's "statements made to overcome [Oracle] were clear and unmistakable." *Id.* at 1358. The court erroneously allowed Kove to "recaptur[e] through claim interpretation specific meanings disclaimed during prosecution." *Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003).

**IV.    A new trial on damages is necessary.**

    **A.    Bergman's bargaining-split opinion should have been excluded.**

Kove seeks to defend the district court's failure to evaluate the reliability of Bergman's bargaining-split opinion as a permissible exercise of discretion, Opening.Br.58, but the court's denial of AWS's *Daubert* motion is a textbook example of the type of conclusory order the Seventh Circuit reviews *de novo*. The order begins with the "[b]ottom line" and contains no analysis other than conclusory assertions that "I think the opinion is sufficiently explained and it's tied to the facts in this case." Appx92. The "absence of reviewable reasoning" in the *Daubert* ruling is itself "sufficient grounds for this court to conclude the district court abused its discretion." *EcoFactor, Inc. v. Google LLC*, __ F.4th __, 2025 WL 1453149, at *2 (Fed. Cir. May 21, 2025) (en banc).

Kove seeks deference by arguing (at 59) that the district court's analysis here was no worse than the ruling in *United States v. Godinez*, 7 F.4th 628 (7th Cir. 2021). That case is inapposite: there, the court had expressly—and erroneously—relied upon other courts' decisions to let the same expert testify to reliability of the same technology sold by his company. 7 F.4th at 630, 635. That incorporation by reference was enough reasoning to justify abuse-of-discretion review, because it was more than conclusory—but it was also an abuse of discretion. *Id.* at 637-38. Here, the district court did not bolster its summary decision by borrowing anything. To

the contrary, another court had previously *excluded* Bergman's bargaining-split testimony for the same reason relevant here—because he never explained how he arrived at his "greater than 50%" split.  Opening.Br.59.

Even on appeal, Kove does not identify any basis for Bergman's bargaining-split opinion that could survive *Daubert*.  Kove focuses (at 61) on justifying the top end of his range, ignoring that Bergman simply asked the jury to pick any percentage between 50 and 100—a range spanning *$500,000,000*—and did not explain why the floor would be 50%, or $517,000,000.  Appx34834-35; Kove.Br.21.  That opinion cries out for an explanation:  Dr. Overton purchased the patents in 2002 for just $243,201 and admitted he would have considered a $1 million offer in 2007, exactly when the hypothetical negotiation was supposed to occur.  Appx35765; Appx33976; Opening.Br.61-62.  Kove's remaining defense (at 61) is just a straw-man argument—AWS's point is not that *only* a precise split will do, but that Bergman was required to reliably justify his range and floor.  That "is an essential prerequisite" for *Daubert* admissibility.  *EcoFactor*, 2025 WL 1453149, at *4.  Without methodology, Bergman just "encouraged the jury to reach a purely speculative judgment."  *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 31-32 (Fed. Cir. 2012).  That is impermissible.

### B.    Neither Goldilocks nor any other testimony can sustain the $525 million award.

Kove contends that the jury could have reached its award without relying on

Bergman's impermissibly speculative testimony based on "Goldilocks," Opening.Br.55-57. Not so. For one thing, all of the numbers Kove gives depend on accepting the 100% bargaining split. Appx41336. At the lower end, Kove needed the BM scaling claims to justify the jury award. Separately, Kove double-counted extensively, refuting its suggestion that it had multiple independent paths to $525 million. In particular, Bergman made clear that if the jury found across-the-board infringement, the value of scaling "for both use in the KFCs and the brick managers" would be "the same $715 million that we saw under the brick manager scaling claims." Appx34804; *see* Appx34806 (same, again for "use of the scaling claims for the KFC cache and brick managers"). That $715 million came from a "price premium [of] 20 percent" minus costs of revenue, Appx34802-03, and that 20% price premium came straight from Goldilocks. Appx34798-800. No other quantifiable information supported it. Subtract $715 million from Bergman's total number of $1.034 billion, and the jury's $525 million award could only rest on "sheer surmise and conjecture." *Whitserve*, 694 F.3d at 33-34.

## CONCLUSION

The judgment of the district court should be reversed.  In the alternative, the

Court should order a new trial.

Respectfully submitted,

/s/ William M. Jay
William M. Jay
GOODWIN PROCTER LLP
1900 N Street, N.W.
Washington, DC 20036
(202) 346-4000

Jesse Lempel
GOODWIN PROCTER LLP
100 Northern Ave.
Boston, MA 02210
(617) 570-1000

May 30, 2025

*Counsel for Appellant Amazon Web
Services, Inc.*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(b)(1) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2), it contains 6,997 words.

This motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-scale requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared using Microsoft Word 365 in 14-point Times New Roman, a proportionally spaced typeface.

May 30, 2025

/s/ *William M. Jay*
William M. Jay

## CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2025, I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Federal Circuit using the Court's CM/ECF system. Counsel for all parties to this case are registered CM/ECF users and will be served by the CM/ECF System.

/s/ *William M. Jay*
William M. Jay